IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MEDIOSTREAM, INC., a California Corporation, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Civil Action No. 2:08-cv-369-DF |
| MICROSOFT CORPORATION, a Washington Corporation, | | **JURY TRIAL DEMANDED** |
| Defendant. | | |

**MEDIOSTREAM INC.'S OPPOSITION TO MICROSOFT CORPORATION'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

**I. INTRODUCTION**

Defendant Microsoft Corporation ("Microsoft") requests in its Motion to Transfer (the "Motion") that this Court ship this patent infringement case off to California. But a transfer in this instance will have little or no impact on the convenience of the parties and witnesses in the case, nor will it serve the interests of justice. Microsoft's Motion is simply an after-the-fact attempt at forum-shopping, and it should accordingly be denied.

Microsoft's Motion should fail for a number of reasons. First, *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*"), did not change the law of transfer under § 1404(a), and does not support transfer in the present case. The Fifth Circuit's decision in *Volkswagen II* was based on the distinction between the *forum non conveniens* dismissal standard and the § 1404(a) transfer standard. Under the proper analysis, a § 1404 transfer still falls under the district court's discretion, and the weighting of public and private interest factors under § 1404 remains the same. Moreover, the Fifth Circuit's *en banc* reversal in *Volkswagen II*

1

was highly fact-specific.  And contrary to Microsoft's suggestion, *Volkswagen II* does not instruct courts to disregard a plaintiff's choice of forum.

Second, Microsoft argues that the present patent infringement suit "has no factual connection to the Eastern District of Texas."  (Motion, at 2)  Not so.  Contrary to Microsoft's suggestions, the Eastern District of Texas has a clear factual connection to this suit because the alleged wrongdoing – a violation of a federal statute, 35 U.S.C. § 271 – is taking place in this district.  Allegedly infringing products are being offered for sale at stores in this district every day.  Under the Patent Act, alongside the federal patent venue statute, 28 U.S.C. § 1400, Plaintiff MedioStream, Inc. ("MedioStream") is entitled to litigate against Microsoft here.  For that matter, MedioStream is already litigating in this district over the same patents at issue in this case, in an infringement lawsuit involving thirteen corporate defendants hailing from all over the world.  That lawsuit, filed before this one, provides an additional pull towards this district.  These facts make this case readily distinguishable from *Volkswagen II*.

Third, the public and private interest factors attendant under § 1404 weigh in favor of maintaining the case in Texas.  Microsoft is no stranger to the state of Texas nor to litigating disputes – defensively *or offensively* – in the Eastern District.  And Microsoft's projections as to what witnesses and materials will be needed in this case are, at this point, highly speculative, and bear little resemblance to the realities of trying a patent case such as this.  The likelihood of a substantial number of non-expert, non-party witnesses testifying in this patent lawsuit is relatively small.  The attendance of party-affiliated witnesses can, of course, be compelled, and the convenience of paid experts and counsel is not relevant.  Depositions and electronic discovery can be conducted all over the country, if not the world.  But at the end of the day, this will be a battle of documents and expert testimony, just as easily presented in Marshall as in San

2

Francisco, New York or Miami. Indeed, the odds of drawing an experienced patent jurist as presiding judge may be higher in Marshall.

Finally, the risk of prejudice and delay to MedioStream's detriment is significant, and would not serve the interests of justice. Any delay resulting from a transfer will also result in increased litigation expenses for all the parties involved. Simply put, there is no good reason to transfer this case to California.

## II. FACTUAL BACKGROUND

MedioStream filed this infringement action based on U.S. Patent Nos. 7,009,655 and 7,283,172 (collectively, the '655 and '172 Patents") against Microsoft on September 30, 2008. No state law claims were asserted in the Complaint. Microsoft filed an answer and counterclaims on December 5, 2008.

The '655 and '172 Patents list Qiang Huang as sole inventor and MedioStream as assignee. Both patents relate to an invention entitled "Method and System for Direct Recording of Video Information Onto A Disk Medium." MedioStream is the owner of all rights, title, and interest in the '655 and '172 Patents. MedioStream alleges that Microsoft sells, or at least offers for sale, products in the Eastern District that infringe the '655 and '172 Patents, including at so-called "big box" stores such as the Best Buy store in Longview. (Isaac Decl.[1], Ex. A)

Microsoft, incorporated in Washington, has substantial contacts in Texas, not to mention around the world. Microsoft operates in four Texas cities – Austin, Dallas, Houston, and San Antonio – and sells its wares throughout Texas. (*See* Bartow Decl.[2], Ex. A)

Already pending in this district is an infringement action involving the '655 and '172

---

[1] Declaration of Romonia Isaac in Support of MedioStream, Inc.'s Opposition to Microsoft Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, submitted herewith.

[2] Declaration of Stuart Bartow in Support of MedioStream, Inc.'s Opposition to Microsoft Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, submitted herewith.

3

LIBA/1955616.1

Patents brought by MedioStream against defendants Acer America Corporation *et al.,* Case No. 2:07-CV-376 (CE), E.D.Tx. ("*Acer*"). The defendants in *Acer* unsuccessfully pursued (and continue to pursue) a strategy similar to that adopted by Microsoft here: try to transfer the case out of Texas, to California. On September 26, 2008, this Court denied a motion by several of the *Acer* defendants to transfer venue from this district to the Northern District of California. Those defendants have recently renewed their motion based on the *Volkswagen II* decision. Given that *Volkswagen II* did not change the law regarding § 1404, nor the facts linking the *Acer* case to Texas, MedioStream does not anticipate a transfer of that case, either.

### III.  MICROSOFT'S MOTION TO TRANSFER VENUE SHOULD BE DENIED

#### A.  Legal Standard

The party seeking transfer under 28 U.S.C. § 1404(a) must show that "good cause" exists to transfer the case. *Volkswagen II*, 545 F.3d at 315; *Martin v. BNSF Ry. Co.*, No. 9:07-CV-154, 2007 WL 4333341, at *1 (E.D. Tex. Dec. 10, 2007). To establish "good cause," the moving part must demonstrate that the proposed transfer will serve the convenience of parties and witnesses and is in the interest of justice. 28 U.S.C. § 1404(a); *Volkswagen II*, 545 F.3d at 315. "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315. Changing the plaintiff's selected venue is not appropriate under § 1404(a) when the moving party fails to show a <u>clear</u> change in convenience: "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. Section 1404(a) also provides that a district court "***may*** transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). Thus, district courts are not required to transfer cases that were properly filed in the venue.

4

Once the court has established that the action was properly filed in the forum, it moves to the next stage of a § 1404(a) analysis and considers several private and public factors used to determine whether a venue transfer serves the convenience of parties and witnesses and is in the interest of justice. *ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-CV-396, 2005 WL 366966, at *1-2 (E.D. Tex. Feb. 16, 2005). The ***private interest factors*** include: (1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of the witnesses and availability of compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and potential prejudice if transfer is granted. *Id*. at *2. The ***public interest factors*** are: (1) the administrative difficulties caused by court congestion; (2) the local interests in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id*.

To prevail, Microsoft must demonstrate that public and private interest factors, and the interests of justice, <u>clearly</u> weigh in favor of transferring the case. Microsoft can only meet this burden by offering factual evidence to support its allegations: "Defendants seeking a transfer cannot carry their burden by merely making unsupported assertions, but rather they must properly establish relevant venue facts by affidavit, deposition or otherwise." *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688-89 (E.D. Tex. 1999) (rejecting defendant's assertions that the venue was inconvenient where unsupported by facts). Here, Microsoft cannot meet – and has not met – its burden.

    B. *Volkswagen II* **Does Not Change The § 1404 Transfer Analysis And Does Not Support Transfer In This Instance**

In *Volkswagen II*, the Fifth Circuit, sitting *en banc*, considered whether it should issue a writ of mandamus directing the transfer of a tort case from the Eastern District of Texas, a venue

5

bearing little or no connection to the parties, witnesses, or facts of the case, to the Dallas division of the Northern District of Texas, a venue with extensive connections to the case. *Volkswagen II*, 545 F.3d at 307.  The case involved a fatal automobile accident that occurred in Dallas, in front of Dallas witnesses, involving an allegedly defectively-designed car sold in Dallas, with Dallas emergency responders attendant, an autopsy by a Dallas coroner, physical evidence located in Dallas, and a Dallas plaintiff.  In a 10-7 decision, the Fifth Circuit overturned the denial of transfer because none of the relevant facts – the scene of the accident, the parties, the documents, the physical evidence, nor the locations of potential witnesses – bore a connection to the Eastern District. *Id*. at 316-18.  On December 9, 2008, the *Volkswagen* plaintiffs filed a petition for *certiorari* with the United States Supreme Court.  (Bartow Decl., Ex. B)

      Aside from a potential review by the Supreme Court, *Volkswagen II* should have limited applicability to the present case for two reasons.  First, it does not change the existing law on transfer of venue.  Transfer is still discretionary under § 1404(a), and the weighting of the private and public factors is still the relevant analysis.  The *Volkswagen II* majority held that the district court erred by applying a *forum non conveniens* dismissal standard to a § 1404(a) transfer motion by requiring the defendant to show that the public and private interest factors "substantially outweigh[ed]" the plaintiffs' choice of venue. *Id*. at 314-15.  Although the Fifth Circuit noted that the showing required for transfer under § 1404(a) is less than that required for dismissal under *forum non conveniens*, the private and public interest factors, and the interests of justice, must still weigh <u>clearly</u> in favor of transfer. *Volkswagen II*, 545 F.3d at 315.  While deference should still be given to the plaintiff's choice of venue, a § 1404 transfer may be appropriate when, for example, the plaintiff's choice is the <u>only</u> factor tying the case to the venue. *See id*. at 315.  After re-weighing the private and public interest factors in *Volkswagen II*, the Fifth Circuit

6

determined that those factors weighed <u>so clearly</u> in favor of a Dallas trial that the case should have been transferred there. The decision was, accordingly, highly fact-specific.

Second, the cause of action at issue in *Volkswagen II* does not necessarily translate neatly to all causes of action, such as the patent case presently before the Court. *Volkswagen II* was a tort case governed by state law, whereas the present infringement action is governed by federal patent law. Statutes such as 35 U.S.C. § 271, which codifies patent infringement under federal law, and 28 U.S.C. § 1400(b), the patent venue statute, confer venue options to infringement plaintiffs that may not be available in the pure diversity context (*i.e.* under 28 U.S.C. § 1391(a)). Moreover, the sources of proof used in the two types of cases may vary significantly and may lead to very different outcomes in the analysis of a § 1404 transfer request. For example, the physical evidence in a tort case arising from a traffic accident or a design defect may not be as easy to access and exchange compared to the evidence in a patent action, which is mostly documentary and easy to exchange electronically. Also, much of the trial testimony in a patent case is provided by paid experts and party-affiliated witnesses, rather than percipient witnesses.

In light of these considerations, the application of *Volkswagen II* to the present case should be tempered accordingly.

**C. This Case Has Significant Ties To The Eastern District Of Texas**

Compared to *Volkswagen II*, the convenience analysis presented here weighs outright in favor of a Texas venue. In its Motion, Microsoft soft-pedals the obvious ties between this case and the Eastern District of Texas, but those ties exist nonetheless. Unlike in *Volkswagen II*, the alleged wrong, as defined by federal statute, is being committed here, in this district. Moreover, Microsoft's complaints of inconvenience are speculative and overstated. Microsoft is a regular litigant in this district, and has even filed offensive cases here. (Bartow Decl., Ex. C) And *Acer*

7

is a closely-related case already pending in this district, involving the same patents, and filed against thirteen defendants from all over the world.

The *Acer* case is well underway; the defendants have answered and contentions have been served under the local Patent Rules. That case has already gone through a round of motions in which the defendants (excepting Texas-based Dell) sought to transfer venue to the Northern District of California. This Court denied the defendants' motion on September 26, 2008, finding that moving the case to California would not result in a clear gain in convenience for the parties and witnesses, or serve the interests of justice. The *Acer* defendants recently filed a motion for reconsideration of that denial based on *Volkswagen II*. Given, however, that *Volkswagen II* did not change the law and the facts of *Volkswagen II* are distinguishable from the *Acer* case for the same reasons discussed above, MedioStream urges that there is no reason for the Court to transfer this case or *Acer*.

The status of the *Acer* case and the geographically diverse nature of the *Acer* defendants favor maintaining both the *Acer* litigation and the present action in this forum. The *Acer* litigation involves thirteen defendants from around the globe. Defendant Nero AG, for example, is headquartered in Germany, and several of the Sony defendants are based in Japan. As for the *Acer* defendants in the United States, several of them – Dell being the most prominent – have operations in Texas. The same is true of Microsoft here. (Bartow Decl., Ex. A) The far-flung locations of the defendants make the Eastern District a logical center of gravity for the litigations as opposed to California. The close ties between the present case and the *Acer* litigation favor simultaneous adjudication by the same court, and favor maintaining both actions in this district. In fact, MedioStream suggests consolidating pre-trial proceedings in both cases.

**D. The Private Interest Factors Do Not Support Transfer**

    1. <u>Microsoft's Allegedly Infringing Conduct is Occurring in This District</u>

Patent rights are national, not local rights. The alleged infringement of the patents in suit – in this case, the harm to MedioStream – takes place nationally. A worldwide seller of products, Microsoft has substantial operations in Texas and sells allegedly infringing products throughout the state. The fact that Microsoft is based in Washington and that allegedly infringing products are sold in California does not mean the case should move to California.

The sale of an infringing product within the Eastern District of Texas is "significant and relevant" and thus the "place of the alleged wrong" factor does not favor transfer. *See, e.g.*, *ConnecTel*, 2005 WL 366966, at *2. "[A]s long as the plaintiff brings its action in a forum where the alleged infringement is occurring, that choice should not be undermined by allegations that infringing activities occur throughout the country." *Cummins-Allison Corp. v. Glory Ltd*, No. Civ.A. 2-03-CV-358TJ, 2004 WL 1635534, at *6 (E.D. Tex. May 26, 2004) (*citing Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 518-19 (E.D. Va. 2000)).

    2. <u>Plaintiff's Choice Of Forum Is Still Entitled To Deference</u>

While the plaintiff's choice of forum is not controlling, it is still entitled to deference. *Volkswagen II*, 545 F.3d at 315*; Allen v. Big Dutchman, Inc., USA*, Civil Action No. 2:07-CV-458, 2008 WL 65078, at *2 (E.D. Tex. Jan. 4, 2008). "When a transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Martin*, 2007 WL 4333341, at *2 (internal quotations omitted). The location of MedioStream's headquarters is not relevant because MedioStream "chose the forum and presumably considered convenience and cost." *ConnecTel*, 2005 WL 366966, at *2; *Cummins-Allison Corp*, 2004 WL 1635534, at *5. And in any event, MedioStream is a small plaintiff, at least compared to Microsoft, so if the

9

convenience and cost are tolerable for MedioStream, certainly they will be for Microsoft as well.

Section 1404 is not intended to be used as a mechanism for Microsoft to transfer the case to a forum in which it would rather be sued. The venue statue intentionally provides plaintiffs with a wide range of choices as to where to pursue their claims. *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983); *In re Triton*, 70 F. Supp. 2d at 689. And Section 1400(b) allows patent plaintiffs to sue wherever a corporate defendant resides.

### 3.   The Convenience Of Parties And Witnesses Does Not Favor Transfer

The convenience of witnesses does not favor transfer. Discovery has not begun, thus it is difficult to determine who the relevant witnesses are and where they are located. Microsoft has not served its initial disclosures, including a disclosure of knowledgeable persons in the case, and at this point determining what witnesses will appear at trial is pure guesswork. In any event, Microsoft has not demonstrated that the location of potential witnesses supports transfer. It is not true, as Microsoft contends at page 7 of its Motion, that all U.S. individuals identified as knowledgeable in the Acer litigation reside in the Northern District of California.[3] As one example, Mr. Stephane Desproges, identified by MedioStream as a knowledgeable person, lives in Massachusetts. (*See* Desproges Decl.[4], ¶ 2) Nevertheless, Mr. Desproges will make himself available in this district for trial. (*Id.* at ¶ 3.)

As for other witnesses, discovery can take place almost anywhere in the world, and depositions will undoubtedly occur at locations convenient for the witnesses including those living overseas. Most witnesses may testify by videotape. Microsoft's Redmond employees can

---

[3] In fact, of the twenty knowledgeable persons identified in MedioStream's initial disclosures, only nine reside in the Northern District of California (five reside in China, five are of unknown residence), and of those nine, all but five are MedioStream-affiliated witnesses. (See Schrader Moving Decl., Exh. A, pp. 3-4)

[4] Declaration of Stephane Desproges in Support of MedioStream, Inc.'s Opposition to Microsoft Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, submitted herewith.

certainly be deposed in or near Seattle. For any overseas witnesses who will be needed at trial (for example, prior art witnesses or Microsoft witnesses from India), the difference in travel time between California and Texas is insignificant. Except for witnesses called to testify in person at proceedings, transfer makes no difference whatsoever. The named inventor on the '655 and '172 Patents, Mr. Qiang Huang, has agreed to make himself available in this district for trial. (Huang Decl.[5], ¶ 4) Microsoft's suggestion that the patent attorneys who prosecuted the '655 and '172 Patents will need to testify at trial is premature at this early stage of the litigation, when the issues in the case have not been sufficiently defined.

As for pre-trial proceedings, it is doubtful that any witnesses will testify in person. As noted above, Mr. Huang will testify in this district at trial, and the convenience of paid, expert witnesses carries little or no weight. *See, e.g., In re Ralston Purina Co.*, 726 F.2d 1002, 1006 n.6 (4th Cir. 1984) ("[t]he convenience of plaintiffs' paid expert witnesses is of little moment"); *Houck v. Trans World Airlines, Inc.*, 947 F. Supp. 373, 376 n.5 (N.D. Ill. 1996) ("[t]he location of expert witnesses is not relevant"); *One Beacon Insur. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 831 (E.D. Va. 2004) ("it is less inconvenient for an expert to travel in order to testify, because an expert can be well compensated . . . ."). Moreover, experts can be found all over the country.

Microsoft is no stranger to the Eastern District of Texas. According to public records, Microsoft is involved in ***nineteen*** pending cases here. Indeed, Microsoft is plaintiff in at least ***three*** of those actions. (Bartow Decl., Ex. C) Is the Eastern District only "inconvenient" for Microsoft in this case?

The Eastern District is located near the geographic center of the United States, roughly

---

[5] Declaration of John Huang in Support of MedioStream, Inc.'s Opposition to Microsoft Corporation's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, submitted herewith.

11

equidistant from the two coasts and also roughly equidistant from Asia, on the one hand, and Europe, on the other. Marshall is only a two and half hour drive from Dallas/Fort Worth International Airport – one of the busiest airports in the United States. (Bartow Decl., ¶ 5 and Ex. D) There are multiple direct flights daily between Seattle and Dallas on at least three major airlines: American, Alaska, and Delta. (Bartow Decl., Ex. E)

With respect to the costs of litigation, there is no evidence that requiring Microsoft to defend itself in the Eastern District will result in any unreasonable expense. Microsoft's history of litigation in this district and prior decisions to litigate here voluntarily demonstrate that the factors of convenience, cost and location weigh against transfer. Moreover, bringing witnesses to Texas may actually prove <u>less</u> costly than bringing them to California, even from Seattle should that prove necessary. The difference in airfare is small. (*Compare* Bartow Decl., Exs. E and F) Hotel room rates are far lower in Marshall than in San Francisco. (*Compare* Bartow Decl., Exs. G and H) The same is likely true of restaurant meals and other travel costs.[6] Whatever the cost difference, Microsoft likely spent more money filing this Motion than it could save by moving this case to California.

### 4. The Sources Of Proof In This Case Will Be Easily Accessible

Microsoft argues that the ease of access to documents and similar sources of proof favors transfer. (Motion, at 9) This is likely incorrect. This Court has recognized that patent cases involve voluminous documentary evidence that is readily exchanged electronically:

> With the volume of documentary evidence associated with a patent case, it is presumed that the parties will exchange discovery electronically. Any convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document. Furthermore, any

---

[6] Both the Fairfield Suites in Marshall and the Comfort Suites in nearby Longview serve a complimentary continental breakfast (including hot items), potentially widening the Eastern District's advantage with respect to dining. (*See* Bartow Decl., Ex. I)

> physical documents that are needed for trial can be shipped just as conveniently to the Eastern District of Texas as the Northern District of California. The same is true of the actual product accused of infringement. The relative ease of access factor is therefore neutral and does not favor transfer to the Northern District of California.

*Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07-cv-355, 2008 WL 819956, at *4 (E.D. Tex. Mar. 25, 2008).

Here, most evidence will likely consist of documentary evidence and expert testimony, conveniently transportable to the Eastern District of Texas. Thus, the "sources of proof" factor does not favor transfer. By this Court's own reckoning, ease of access and collection of sources of proof in this context do not favor transfer. *See ConnecTel*, 2005 WL 366966, at *3 ("[g]iven that patent cases like this involve battles of documents and technical experts scattered across the nation, this factor is immaterial and thus does not favor transfer.")

          5.    <u>Transfer To The Northern District Of California May Cause Undue Delay</u>

Section 1404 permits transfer to another venue if doing so is in the "interest of justice." Rule 1 of the Federal Rules of Civil Procedure sets the goal of securing the "just, speedy and inexpensive determination of every action." Delay is an obstacle to fulfilling this goal. It is a virtual certainty of modern patent litigation that the expense of litigation is directly proportional to the time to resolution. Transfer to California could delay resolution of the case by more than a year, which would frustrate the policy § 1404 seeks to advance.

Patent plaintiffs often file in this district because it has a reputation for quickly bringing patent cases to trial. The time for a case to reach trial in this district historically has been faster than in the Northern District of California. The median time from filing to jury trial is 17 months in the Eastern District of Texas, according to 2007 statistics. (Bartow Decl., Ex. J) By contrast, the median in the Northern District of California is 28 months. *Id.* That eleven month

differential, plus additional administrative time, could result in a year's delay.

Additionally, the parties have already invested time in the Eastern District of Texas. The Complaint was filed on September 30, 2008. Microsoft filed its Answer and Counterclaims on December 5, 2008. The *Acer* litigation has proceeded through the exchange of infringement and invalidity contentions. Were this action transferred, it would result in the same patents being litigated against thirteen defendants here, and against one defendant (Microsoft) in the Northern District of California. And the delay resulting from the transfer would likely postpone the resolution of this case by months, at least. Such a delay would not serve the interests of justice.

### E. The Public Interest Factors Weigh In Favor Of The Eastern District Of Texas

#### 1. There Is A Clear Local Interest In Resolving This Action In The Eastern District

This Court has held that residents of the Eastern District of Texas have an interest in the enforcement of federal patent laws against infringing activity. *See Cummins-Allison*, 2004 WL 1635534, at *7. Infringement is statutorily defined under 35 U.S.C. § 271(a) to include the sale of products: "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). MedioStream alleges that Microsoft is infringing the '655 and '172 Patents by selling infringing products in this district. Resolution in this district will advance local interests in seeing justice done by resolving the dispute. *See Aloft Media*, 2008 WL 819956, at *8.

#### 2. There Are No Administrative Difficulties Caused By Court Congestion

Transferring this case to the Northern District of California would only relocate it to a more congested judicial district. According to the US Courts website, for the twelve months ending September 30, 2007, the Eastern District of Texas saw 3,873 filings and had 3,352

14

pending actions. The Northern District of California saw 7,970 filings with 9,005 pending actions. (Bartow Decl., Ex. K) There are also more cases pending per judge in the Northern District of California, with 643 pending cases per judge in that district, and only 419 pending cases per judge here in the Eastern District. *Id*. Judicial economy favors resolving both this case and *Acer* in this district, rather than transferring this case to California.

## IV.  CONCLUSION

Microsoft cannot meet the "good cause" burden of showing that MedioStream's choice of forum should be disrupted. This action was properly filed in this district and the aggregate of public and private interest factors show that transfer to the Northern District will not yield a clear increase in convenience, nor will it serve the interests of justice. Accordingly, MedioStream respectfully requests that the Court deny Microsoft's Motion and retain this action in this district.

Dated:  December 22, 2008

Respectfully submitted,

By:  /s/ Byron Cooper
Byron Cooper
CA State Bar No. 166578
Gregory S. Bishop
CA State Bar No. 184680
April E. Abele
CA State Bar No. 180638
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel: (650) 752-3100
Fax: (650) 853-1038
Email: bcooper@goodwinprocter.com
Email: gbishop@goodwinprocter.com
Email: aabele@goodwinprocter.com

Elizabeth F. Stone
CA State Bar No. 239285
GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, CA 94111
Tel: (415) 733-6000
Fax: (415) 677-9041
Email: estone@goodwinprocter.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
N. Claire Abernathy
State Bar No. 24053063
CAPSHAW DeRIEUX, LLP
Energy Centre
1127 Judson Road, Suite 220
Longview, TX 75601
Tel: (903) 236-9800
Fax: (903) 236-8787
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com
Email: chenry@capshawlaw.com

LIBA/1955616.1

Andrew T. Gorham
State Bar No. 24012715
Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 00783521
PARKER, BUNT & AINSWORTH, P.C.
1000 East Ferguson, Suite 1114
Tyler, Texas  75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
Email: tgorham@pbatyler.com
Email: rmparker@pbatyler.com
Email: rcbunt@pbatyler.com
Email: charley@pbatyler.com

Franklin Jones, Jr.
State Bar No. 00000055
Email: maizieh@millerfirm.com
JONES & JONES, INC.
201 West Houston Street
P.O. Drawer 1249
Marshall, Texas 75671-1249
Telephone: (903) 938-4395
Facsimile: (903) 938-3360

Attorneys for MEDIOSTREAM, INC.

## CERTIFICATE OF SERVICE

    I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 22nd day of December, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

                                    /s/ Byron Cooper
                                    Byron Cooper

LIBA/1955616.1