UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MEDIOSTREAM, INC. | § § § | |
| vs. | § § § § | CASE NO. 2:08-CV-369-CE |
| MICROSOFT CORPORATION, et al. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

Currently pending before the Court are four motions seeking to dismiss Defendants' counterclaims and affirmative defenses relating to inequitable conduct. (Dkt. No. 223, 224, and 225) Specifically, Plaintiff seeks to dismiss and all Defendants' inequitable conduct affirmative defenses and counterclaims under Rule 12(f) and Rule 12(b)(6), respectively, for failure to comply with Rule 9 (Dkt. Nos. 223 and 224).[1]  Having reviewed the briefing, the Court finds that Plaintiff's motions should be DENIED.

**II.  Procedural and Factual History**

The present action is a consolidation of two lawsuits filed by Plaintiff.  The first, filed in August of 2007 against Acer, Apple, Dell, and Gateway, alleged infringement of U.S. Patent Number 7,009,655 ("the '655 patent").  This first suit was later amended to add Sony, Nero, Cyberlink, and Asus as defendants, to additionally allege infringement of U.S. Patent Number 7,283,172 ("the '172

---

[1]   Plaintiff incorporated its motions relating to inequitable conduct (Dkt. Nos. 223 and 224) into its motion to dismiss for failure to state a claim against Nero AG's counterclaims (Dkt. No. 225).  This decision only resolves Plaintiff's motion to dismiss Nero AG's counterclaims as it relates to Nero AG's inequitable conduct counterclaims and affirmative defenses.

patent"), and to allege various state law claims including unfair competition, unjust enrichment, conversion, and misappropriation of trade secrets. The second suit was filed in September of 2008 and alleged that Microsoft infringed both the '655 patent and the '172 patent. In February of 2009, the first and second suits were consolidated.

The asserted patents are directed generally to digital video processing technology. The patents-in-suit describe the conversion of digital video between formats and authoring of digital video to optical media. Plaintiff alleges that defendants infringe these patents either by selling computers with such software or by selling such software directly.

In their answers to Plaintiff's complaints, Defendants have asserted an inequitable conduct affirmative defense and counterclaim premised on several acts that Defendants allege constitute inequitable conduct. Specifically, Defendants allege that Plaintiff engaged in inequitable conduct by failing to disclose neoDVD, CAMpeg RT, Ulead, and Sonic Solutions prior art, failing to disclose prior rejections in related applications, failing to disclose cited references from related applications, and generally failing to disclose any material information to the patent office. (e.g. Dkt. No. 193, pp. 8-28).

### A. Plaintiff's Failure to Disclose neoDVD Prior Art to the Patent Office

Defendants allege that Mediostream's neoDVDstandard was made, sold, and in public use in this country more than one year prior to the date of application for the patents-in-suit, that neoDVDstandard met all limitations of at least one claim, and that Mediostream did not disclose this prior sale and public use to the patent office during prosecution. To support their allegation of materiality, Defendants cite deposition testimony of the inventor stating that neoDVDstandard embodied the idea he sought to patent. To support their allegation that the neoDVDstandard product

2

is prior art, Defendants cite records of a preview of neoDVDstandard at a trade show more than one year prior to the application date, including working copies distributed to potential customers. Additionally, Defendants cite evidence that both Qiang Huang, the named inventor of the patents-in-suit, and Philip Otto, formerly Mediostream's CEO and CFO, were substantially involved in the prosecution of the patents and knew of the distribution of neoDVDstandard more than one year prior to the filing date of the patents-in-suit. Defendants also allege that neither Mr. Huang, nor Mr. Otto, nor the prosecuting attorneys disclosed this public use to the patent office and allege that this withholding was intentional and deceptive.

### B. Plaintiff's Failure to Disclose CAMpeg RT Prior Art

Defendants allege that Mediostream's CAMpeg RT software was sold in the United States more than one year before the filing date of the patents-in-suit, that CAMpeg RT either contains all limitations of at least one claim or renders all limitations of at least one claim obvious, that Mr. Huang and his attorneys were aware of this, and that they failed to disclose this prior sale or public use to the patent office. To support their allegations, Defendants cite to invalidity contentions that assert that all the functionality claimed by at least one claim was present in CAMpeg RT or would be obvious in light of CAMpeg RT. Defendants allege that Mr. Huang would have known of the technical capabilities of CAMpeg RT because he was director of engineering at Mediostream at the time CAMpeg RT was being sold and supported. Additionally, one of Mediostream's prosecuting attorneys, Richard Ogawa, admitted that his firm had knowledge of CAMpeg RT prior to the application date of the patents-in-suit. Defendants also allege that neither Mr. Huang nor his attorneys disclosed CAMpeg RT to the patent office, and that this failure to disclose was intentional and deceptive.

### C. Plaintiff's Failure to Disclose Ulead Prior Art

Defendants allege that Ulead Systems, Inc. ("Ulead") sold a video editing software package called Video Studio 5.0 DVD Edition ("VideoStudio") in the United States more than one year prior to the filing date of the patents-in-suit, that VideoStudio met all limitations of at least one claim of the patents-in-suit, that Mr. Huang and Mr. Otto were aware of this prior to filing, and that, intentionally and deceptively, they failed to disclose VideoStudio to the patent office. Defendants support their contentions with correspondence received by Mr. Huang and Mr. Otto disclosing the features of VideoStudio and a feature comparison chart that included VideoStudio and Mediostream's competing products. Neither Mr. Otto nor Mr. Huang disclosed VideoStudio to the PTO. Defendants allege this failure to disclose was intentional and deceptive.

### D. Plaintiff's Failure to Disclose Sonic Solutions Prior Art

Defendants allege that Sonic Solutions sold DVD video authoring software marketed as DVDit! 2 ("DVDit") and MyDVD 2.3 ("MyDVD") more than one year prior to the filing date of the patents-in-suit, that DVDit and MyDVD are material to the patentability of the claims of the patents-in-suit, that Mr. Huang and Mr. Otto were aware of DVDit and MyDVD and their materiality to the patentability of their patent application prior to filing, and that they failed to disclose DVDit or MyDVD to the patent office. Defendants support their allegations with documentary evidence and deposition testimony by Mr. Huang and Mr. Otto that they were aware of DVDit and MyDVD prior to the filing date of the patents-in-suit. Defendants additionally argue that, because Mr. Huang felt that Mediostream's neoDVD product was similar to Sonic Solutions' DVDit, he knew DVDit would be material to the patent applications filed to cover neoDVD. Defendants allege that, despite this knowledge of materiality, neither Mr. Huang nor Mr. Otto disclosed DVDit or MyDVD to the patent

4

office, and they concealed Sonic Solutions' prior art intentionally and deceptively.

      **E.     Plaintiff's Failure to Disclose Prior Rejection of Claims in Prior Application Prosecution**

During the prosecution of U.S. Patent Application No. 10/202,999 ("the '999 application"), which later issued as the '655 patent, originally filed claims 1-12, 15, and 20 were rejected as anticipated under 35 U.S.C. 102(e) by U.S. Patent No. 6,370,198 ("the Washino reference"). Mediostream did not traverse the rejection but instead amended its claims to depend from one of the non-rejected claims. The '655 patent subsequently issued. Before the issuance of the '999 application as the '655 patent, Mediostream filed a continuation application ("the '280 application"). Defendants allege that the '280 application was filed with the original claims that had been rejected as anticipated during the prosecution of the '999 application, but not traversed. Defendants further allege that Mediostream did not inform the patent office that these claims had been previously rejected, and the claims ultimately issued after Mediostream filed a terminal disclaimer. Finally, Defendants allege that Mediostream's failure to disclose to the patent office its previous rejection of identical claims in a parent application was intentionally deceptive, and that its behavior in prosecuting the '280 patent application constitutes inequitable conduct.

      **F.     Plaintiff's Failure to Disclose Auwens Reference in '172 Prosecution**

While the '999 patent application was pending, Mediostream filed U.S. Patent Application No. 10/290,047 ("the '047 application"), which claimed priority to the '999 application. During the pendency of the '280 patent application and before the issuance of the '172 patent, the '047 application was rejected as unpatentable over the Washino reference in view of U.S. patent Application No. 2002/0131767 ("the Auwens reference"). Defendants allege that, although

Mediostream later distinguished the Auwens reference, it did not argue that the Auwens reference failed to teach "continuous transfer of video and audio information in final format" as the patent office claimed. Defendants argue that this shows that the Auwens reference was material to patentability of the '280 patent application and that Mediostream's failure to disclose the Auwens reference constitutes inequitable conduct.

### G. Plaintiff's Collective Failure to Disclose any Material Information to the Patent Office

Defendants further allege that, even if none of the alleged acts constitutes inequitable conduct, the alleged acts together constitute inequitable conduct. Defendants allege that, together, the alleged acts of inequitable conduct evidence a pattern of inequitable conduct intentionally pursued in order to secure issuance of the '655 and '172 patents. To support this contention, Defendants cite *Nilssen v. Osram Sylvania, Inc.* 504 F.3d 1223, 1235 (Fed. Cir. 2007) (explaining that deceptive intent can be inferred from a pattern of "mistakes" or "oversights" that conceal material information from the patent office).

## III. Legal Standard

Inequitable conduct may be established by providing clear and convincing evidence of "(1) material prior art, (2) knowledge chargeable to the patent applicant of prior art and its materiality, and (3) the applicant's failure to disclose the prior art to the PTO with intent to mislead." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 972 (Fed. Cir. 2010). Claims of inequitable conduct must be plead with particularity under Rule 9(b). *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Rule 9(b) requires, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). For inequitable conduct, the "circumstances" that must be plead with particularity are "the specific who, what when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). As to the pleading standard of "knowledge" and "intent," the Federal Circuit has explained:

> [A]lthough "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id*. at 1328-29.

## IV. Analysis

Defendants have pled with particularity as required by Rule 9(b) and have met the heightened pleading standard of *Exergen*. For each individual alleged act of inequitable conduct, Defendants have identified at least one individual knew of the withheld information and/or withheld the information, and supported those allegations with facts. Defendants' factual allegations are sufficient to infer a specific intent to deceive.

### A. neoDVD

Defendants have pled, with factual support, that Mr. Huang and Mr. Otto knew of neoDVDstandard and its materiality to the patentability of the '999 patent application and its progeny. Defendants support their allegation of materiality with Mr. Huang's deposition testimony that neoDVDstandard embodies the invention covered by his patent. Defendants support their

allegation of knowledge with documentary evidence that both Mr. Huang and Mr. Otto were involved in distributions and offers for sale of neoDVDstandard before the critical date of the patents-in-suit. Defendants further allege that neither Mr. Huang nor Mr. Otto disclosed the prior public sale or use of neoDVDstandard to the patent office. The Court may reasonably infer deceptive intent[2] from an applicant's failure to disclose prior art that he knows or believes to be material to patentability. Defendants' pleadings here are sufficient to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

### B. CAMpeg RT

Defendants have pled, with factual support, that Mr. Huang and Mr. Ogawa knew of CAMpeg RT and its materiality to the patentability of the '999 patent application and its progeny. Defendants further allege that neither Mr. Huang nor Mr. Ogawa disclosed the prior public sale or use of CAMpeg RT to the patent office. Defendants support their allegation of materiality with a claim chart attached to their pleadings that alleges that CAMpeg RT contains all but one limitation of at least one claim, and that the remaining limitation is obvious in light of numerous references. Defendants support their allegation that Mr. Huang and Mr. Ogawa knew of CAMpeg RT based on Mr. Huang's position and job responsibilities and Mr. Ogawa's prior legal representation related to the CAMpeg RT product. The Court may reasonably infer deceptive intent from an applicant's failure to disclose prior art he knows or believes to be material to patentability. Mr. Ogawa, as an attorney registered to practice before the patent office, should have known of his duty to disclose any

---

[2] The Court notes that while these allegations standing alone may be sufficient to support an inference of deceptive intent, additional evidence contradicting the facts of the pleadings or providing reasonable explanations for Mediostream's failures to disclose alleged in the pleadings may cut against such an inference.

material references.  Defendants' pleadings here are sufficient to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

### C. Ulead

Defendants have pled, with factual support, that Mr. Huang and Mr. Otto knew of Ulead's VideoStudio product and its materiality to the patentability of the '999 patent application and its progeny.  Defendants support their allegations of materiality and knowledge with correspondence received by both Mr. Huang and Mr. Otto detailing the features of Videostudio and a comparison chart between Videostudio and neoDVDstandard prepared by Mr. Huang for Mr. Otto showing that VideoStudio contained all relevant features of neoDVDstandard.  Defendants further allege that neither Mr. Huang nor Mr. Otto disclosed the prior public sale or use of Ulead's VideoStudio product to the patent office.  The Court may reasonably infer deceptive intent from an applicant's failure to disclose prior art he knows or believes to be material to patentability.  Defendants' pleadings here are sufficient to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

### D. DVDit/MyDVD (Sonic Solutions)

Defendants have pled, with factual support, that Mr. Huang and Mr. Otto knew of Sonic Solutions' DVDit and MyDVD products. Defendants further maintain that Mr. Huang believed that at least DVDit had features very similar to those in neoDVDstandard, a product he believed to embody the idea covered by the '999 patent application and its progeny.  Accordingly, based on the facts alleged in the pleadings, at least Mr. Huang knew or should have known that DVDit was material to patentability. Neither Mr. Huang nor Mr. Otto disclosed DVDit or MyDVD to the patent office.  The Court may reasonably infer deceptive intent from an applicant's failure to disclose prior art he knows or believes to be material to patentability.  Defendants' pleadings here are sufficient

9

to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

     **E.     Prior Rejections**

Defendants have pled, with factual support, that two of Mediostream's prosecuting attorneys, Stephen Pang and Kenneth Allen, knew of a prior, untraversed rejection issued against the claims filed with the '280 application and did not inform the patent office of this prior rejection, ultimately allowing the previously rejected claims to issue in the '172 patent. Defendants have sufficiently alleged that Mr. Allen and Mr. Pang knew of the previous rejection, and this untraversed rejection was clearly material to the patentability of the claims prosecuted in the '280 application.

Mediostream argues that, as a matter of law, this lack of disclosure of the parent application's file history cannot constitute inequitable conduct. To support that contention, Mediostream cites to the MPEP which states that resubmission of references previously submitted in an IDS is unnecessary in a continuation application. MPEP 609.02. However, Defendants allege that Mediostream's attorneys committed inequitable conduct when they failed to disclose a prior rejection of identical claims. The rejection itself is material to patentability, and in this case the same examiner was examining the prior rejected claims. In *McKesson*, upon which Defendants rely, the Federal Circuit held that a different examiner's prior rejection of a substantially similar claim in a co-pending application was material and should be disclosed. *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897, 919 (Fed. Cir. 2007).

Under the MPEP, the examiner in this case may have had the Washino reference before him; however, he may not have maintained awareness of the materiality of this reference in light of his prior rejection. Further, one might infer that Mediostream's counsel knew that the examiner was mistakenly allowing a patent over a rejection that Mediostream never argued against or amended

around. If, as alleged, Mediostream's attorneys had knowledge of this mistake and failed to notify the patent office of this mistake with the specific intent to deceive the examiner, this may constitute inequitable conduct. Accordingly, Defendants' pleadings are sufficient to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

### F. Failure to Disclose Auwens Reference in '172 Prosecution

During prosecution of the '047 application, an application that claimed priority to the '999 application, the patent office rejected all claims over Washino in view of Auwens. Mr. Allen, prosecuting attorney for both the '047 application and the '280 application, successfully traversed the rejection but failed to disclose this rejection, the Auwens reference, or his argument traversing the rejection to the examiner of the '280 application. Each of these is alleged to have been material to the patentability of the '280 application. Defendants further allege that Mr. Allen's withholding of this material information was intentional and deceptive. Accordingly, Defendants' pleadings are sufficient to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

### G. Collective Failure to Disclose

Defendants additionally allege that all of the above allegations, taken together, constitute a pattern of inequitable conduct. Because Defendants' individual allegations sufficiently allege inequitable conduct, Defendants' collective failure to disclose allegation is sufficient to survive Rule 12(f) and Rule 12(b)(6) under *Exergen*.

## V. Conclusion

For the reasons stated above, Plaintiff's Motion to Dismiss Defendants' Inequitable Conduct Counterclaims Pursuant to Rule 12(b)(6) (Dkt. No. 223) and Plaintiff's Motion to Strike Defendants' Inequitable Conduct Affirmative Defenses Pursuant to Rule 12(f) (Dkt. No. 224) are DENIED.

Plaintiff also incorporated these arguments in its Motion to Dismiss Nero AG's Counterclaims (Dkt. No. 225), and to the extent that motion seeks relief from Nero AG's inequitable conduct counterclaims and defenses, it is DENIED.

SIGNED this 27th day of October, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE