IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MEDIOSTREAM, INC. | § | |
| | § | |
| vs. | § | CASE NO. 2:08-CV-369-CE |
| | § | |
| MICROSOFT CORPORATION | § | |

**MEMORANDUM OPINION**

Before the court is plaintiff MedioStream, Inc.'s ("MedioStream") motion to dismiss defendant Nero AG's ("Nero") fifth through fourteenth counterclaims under Rule 12(b)(6) (Dkt. No. 225). Having reviewed the briefing and for the following reasons, the court GRANTS MedioStream's motion to dismiss Nero's fifth counterclaim insofar as it alleges breach of contract due to MedioStream's failure to destroy or return its copy of the embedded API. The court, however, DENIES MedioStream's motion to dismiss the remainder of Nero's fifth counterclaim, as well as Nero's sixth through fourteenth counterclaims.

**I.     BACKGROUND**

MedioStream sued Nero's subsidiary on November 9, 2007 and added Nero to this litigation on October 20, 2008, seeking damages and an injunction for infringement of U.S. Patent Nos. 7,009,655 and 7,283,172. On January 20, 2009, Nero filed its original answer alleging four counterclaims for declaratory judgment of non-infringement and invalidity of the two asserted patents. On December 23, 2009, Nero amended its answer to allege breach of contract, fraudulent inducement, misappropriation of trade secrets, copyright infringement, and inequitable conduct counterclaims. Although Nero again amended its counterclaims on January 14, 2010, dropping the inequitable conduct counterclaim, Nero filed its fourth answer and re-asserted its inequitable conduct counterclaim on February 12, 2010. On March 8, 2010,

1

MedioStream filed this motion to dismiss the following counterclaims: (1) Nero's fifth, eighth, ninth, and thirteenth breach of contract counterclaims; (2) Nero's sixth fraudulent inducement counterclaim; (3) Nero's seventh misappropriation of trade secrets counterclaim; (4) Nero's tenth, eleventh, and twelfth copyright infringement counterclaims; and (5) Nero's fourteenth inequitable conduct counterclaim.

## II.  LEGAL STANDARD

Although motions to dismiss are viewed with disfavor and rarely granted in the Fifth Circuit, under Rule 12(b)(6) a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). When reviewing a motion to dismiss, a court looks only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

The Supreme Court has recently pronounced two guiding principles in determining whether a complaint can survive a motion to dismiss. *Id*. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Id.* Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

Courts in the Fifth Circuit have dismissed complaints under Rule 12(b)(6) if an affirmative defense appears on the face of the pleading. *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1255 (5th Cir. 1986). For example, "a complaint that shows relief to be barred by…the statute of limitations, may be dismissed for failure to state a cause of action." *Id.* (quoting *Kaiser Aluminum v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). However, the face of the complaint must show "beyond doubt that the statute of limitations period has run." *Id.*

## III. DISCUSSION

### A. Nero's Fifth Counterclaim for Breach of the Software Evaluation Agreement

MedioStream argues that Nero's counterclaim for breach of the parties' Software Evaluation Agreement ("SEA") is barred by the statute of limitations. Under California law,[1] the statute of limitations for a breach of contract is four years. CAL. CIV. PROC. CODE § 337 (2010).

---

[1] Texas courts ordinarily enforce contractual choice-of-law provisions if the chosen forum has a substantial relationship to the parties and the transaction. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990)). The parties' SEA includes a California choice-of-law provision, and thus California substantive law is likely to apply to this counterclaim.

3

The general rule under California law is that a cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether the injured party is aware of his right to sue. *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citing *Niles v. Louis H. Rapoport & Sons*, 53 Cal. App. 2d 644, 651 (1942)). However, under California's discovery rule, a cause of action accrues "when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action." *Id.* (quoting *April Enter., Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (1983)). California courts have long applied the discovery rule to claims involving fraud and difficult-to-detect injuries. *See, e.g.*, *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1423-24 (2003). And, in *April Enterprises*, the California Court of Appeals first applied the discovery rule to a breach of contract action not involving fraud, holding that the rule was properly applied to "breaches which can be, and are committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *April Enter.*, 147 Cal. App. 3d at 832.

The parties entered into the SEA on June 15, 2010, and, by its terms, the agreement terminated twenty-one days later. Nero pled that, shortly after the SEA was executed, it provided MedioStream a copy of its embedded Application Programming Interface ("API") in accordance with the SEA. Nero further pled that MedioStream breached the SEA by: (1) using, disclosing, and testing Nero's embedded API outside of the designated evaluation site; (2) using the embedded API for the development, testing, debugging, and finalizing of its own products; (3) failing to require employees who had access to the embedded API to sign a confidentiality agreement; (4) using and disclosing Nero's embedded API beyond the allowed twenty-one day period; (5) failing to send confirmation of its destruction of or return its copy of the embedded

API within ten days after termination of the SEA; and (6) failing to provide Nero with notice of errors or bugs in the embedded API. (Fourth Am. Countercl. ¶¶ 49-54). Nero further alleged that it had no reason to suspect any of these breaches because MedioStream's actions were internal and covert. (Fourth Am. Countercl. ¶¶ 23-24). For example, Nero alleged that MedioStream's breach of the SEA by disclosing and testing Nero's embedded API happened in China, which is well outside of the evaluation site provided for in the SEA. (Fourth Am. Countercl. ¶¶ 18-20). Furthermore, Nero pled that MedioStream's breach by using the embedded API for the development, testing, debugging, and finalizing of its own products was achieved in secret between MedioStream and its China subsidiary. (Fourth Am. Countercl. ¶¶ 18-20). Thus, Nero urges the court to conclude that the limitations period on Nero's fifth counterclaim did not accrue until discovery in this litigation revealed MedioStream's various breaches of the SEA.

MedioStream, however, argues that at least two of the alleged breaches accrued in July 2001. According to MedioStream, Nero should have known of MedioStream's alleged breach arising from its failure to provide bug reports soon after the contract expired in July 2001. Likewise, MedioStream argues that Nero should have known of MedioStream's alleged breach arising from its failure to destroy or return its copy of the embedded API in July 2001. Thus, MedioStream urges the court to conclude that the statute of limitations on all of Nero's alleged breaches of the SEA accrued in July 2001 and are therefore barred.

Considering the facts pled in Nero's answer, the court concludes that MedioStream's alleged breach of the SEA by failing to destroy or return its copy of the embedded API accrued in July 2001. The SEA, which is incorporated in Nero's answer, required MedioStream to return or provide written confirmation of the destruction of the embedded API and any related materials

within ten days of the termination of the SEA. The SEA terminated on or about July 7, 2001, and therefore Nero could have discovered, through the exercise of reasonable diligence, all of the facts essential to this alleged breach in July 2001. The face of Nero's answer demonstrates beyond doubt that the four-year limitations period on this alleged breach ran long ago. As such, the court grants MedioStream's motion to dismiss this alleged breach of the SEA. The court's conclusion, however, does not mean that this alleged breach has no probative value with regard to the issues in this litigation, and the court expresses no opinion on the admissibility of evidence concerning this breach. Furthermore, MedioStream has provided the court with no authority to support its contention that if one breach of the SEA is time barred, all other alleged breaches would also be time barred.

With regard to the other alleged breaches of the SEA, Nero pled numerous facts indicating that MedioStream committed these breaches in secret, under circumstances demonstrating that the harm flowing from the breaches was not reasonably discoverable by Nero until this litigation began. As such, Nero has pled facts showing that California's discovery rule could plausibly apply, and therefore the court cannot conclude beyond doubt and as a matter of law that the other alleged breaches of the SEA are time barred. Accordingly, the court denies MedioStream's motion to dismiss Nero's fifth counterclaim, except as to the alleged breach arising from MedioStream's failure to destroy or return its copy of the embedded API.

### B. Nero's Sixth Counterclaim for Fraudulent Inducement

MedioStream urges the court to dismiss Nero's fraudulent inducement counterclaim because it is: (1) not pled with the particularity required by Rule 9(b); (2) barred by the statute of limitations; and (3) preempted by the Uniform Trade Secrets Act. The court concludes that Nero pled its fraudulent inducement counterclaims with sufficient particularity to comply with Rule

9(b). Further, the court cannot conclude beyond doubt that Nero's fraudulent inducement counterclaim is barred by the statute of limitations. And finally, the court concludes that the fraudulent inducement counterclaim is not preempted by California's Uniform Trade Secrets Act because the two counterclaims do not depend on the identical nucleus of facts. As such, the court denies MedioStream's motion to dismiss Nero's fraudulent inducement counterclaim.

1. *Sufficiency Under Rule 9(b)*

Allegations of fraud or mistake require a heightened pleading standard under Rule 9(b), which requires the pleader to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also Adrain v. Genetec, Inc.*, No. 2:08-CV-423, 2009 U.S. Dist. LEXIS 90946, at *4-5 (E.D. Tex. Sept. 30, 2009). The Fifth Circuit strictly interprets Rule 9(b), requiring the pleader to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty v. Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 207 (5th Cir. 2009); *see also U.S. ex rel. Williams v. Bell Helicopter Textron*, 417 F.3d 450, 453 (5th Cir. 2005) (requiring a pleading that identifies the "who, what, when, where and how" of the alleged fraud.).

MedioStream argues that Nero has not satisfied Rule 9(b)'s heightened pleading standard because it did not plead the who, what, when, where, and how of the alleged fraud. However, in its answer, Nero alleges that MedioStream approached Nero under the guise of potentially licensing Nero's embedded API in early 2001. (Fourth Am. Countercl. ¶¶ 15, 17). Nero further alleges that MedioStream and the members of MedioStream's technical team internally rejected Nero's licensing terms because they had a problem with the terms. (Fourth Am. Countercl. ¶ 16). Even so, Nero alleged that MedioStream decided to enter into the SEA and obtain Nero's

embedded API for the purpose of studying it to improve their own products. (Fourth Am. Countercl. ¶ 16). Nero even quoted a statement alleged to have been made by one of MedioStream's technical team members wherein he states that although he has a "problem" with Nero's licensing terms, MedioStream should nevertheless obtain a copy of Nero's embedded API "if only to see what's in it." (Fourth Am. Countercl. ¶ 16). Finally, Nero explains why MedioStream's actions were fraudulent, pleading that MedioStream made false and misleading representations regarding its objective in obtaining Nero's embedded API with the intent to defraud Nero into entering into the SEA. (Fourth Am. Countercl. ¶ 17). In view of the foregoing, the court concludes that Nero's fraudulent misrepresentation counterclaim meets the pleading requirements of Rule 9(b).

### 2. *Statute of Limitations*

Pursuant to California Code of Civil Procedure § 338(d), there is a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake." But "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." CAL. CIV. PROC. CODE § 338(d).

MedioStream argues that Nero should have discovered the alleged fraudulent inducement when MedioStream allegedly did not comply with the terms of SEA. However, MedioStream fails to explain how its failure to adhere to the terms of the SEA could put Nero on notice of the facts constituting fraud in the inducement. MedioStream's accrual contention therefore lacks merit, and the court rejects the argument.

Nero specifically pled that while the parties were negotiating the SEA, MedioStream was hiding its true intentions. (Fourth Am. Countercl. ¶¶ 15-17). As such, Nero pled that there was no reasonable inquiry it could have made to detect MedioStream's false pretenses in entering

into the SEA and that it never would have uncovered MedioStream's fraudulent representations absent discovery in this litigation. (Fourth Am. Countercl. ¶¶ 23-24). Considering that the court must accept Nero's factual allegations as true, the court cannot conclude beyond doubt that Nero's fraudulent inducement counterclaim is barred by the statute of limitations. It is plausible that the discovery rule could apply to this counterclaim, and therefore the court denies MedioStream's motion to dismiss Nero's sixth counterclaim on limitations grounds.

       3.     *Preemption*

Finally, MedioStream argues that Nero's fraudulent inducement claim is preempted by Nero's trade secret claim because both causes of action arise from the same nucleus of facts. California's Uniform Trade Secrets Act ("UTSA") "preempts common law claims that are based on misappropriation of a trade secret." *Callaway Golf Co. v. Dunlop Slazenger Grp. Am., Inc*. 318 F. Supp. 2d 216, 219 (D. Del. 2004). "Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [the] UTSA." *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-0635-JCS, 2007 WL 1455903 at *9 (N.D. Cal. 2007) (citing *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1033 (N.D. Cal. 2005)).

The facts critical to Nero's fraudulent inducement claim are not the same as the facts necessary to prove its UTSA misappropriation claim. To prove its fraudulent inducement claim, Nero must prove that MedioStream made fraudulent representations upon which Nero relied in entering into the SEA. As such, Nero must rely on MedioStream's alleged actions leading up to the execution of the SEA. However, to prove its UTSA claim, Nero must show, among other things, that MedioStream either disclosed or used Nero's trade secret without express or implied consent. And therefore, Nero must rely on MedioStream's actions that occurred after

MedioStream executed the SEA and thereby received access to the trade secret. Nero's claims are not based on an identical nucleus of facts, and therefore the court denies MedioStream's motion to dismiss Nero's fraudulent inducement counterclaim on preemption grounds.

### C. Nero's Seventh Counterclaim for Misappropriation of Trade Secrets

The court concludes that: (1) Nero's misappropriation counterclaim is sufficiently pled under Rule 8(a); (2) Nero's answer does not show beyond doubt that the misappropriation claim is barred by the statute of limitations; and (3) Cal. Civ. Proc. Code § 2019.210 does not bar Nero's misappropriation counterclaim. As such, the court denies MedioStream's motion to dismiss Nero's misappropriation counterclaim.

#### 1. *Sufficiency Under Rule 8(a)*

Under California's UTSA,[2] to state a cause of action for misappropriation of trade secrets, Nero must plead two primary elements: (1) the existence of a trade secret; and (2) misappropriation of the trade secret. *See* CAL. CIV. CODE § 3426.1(b); *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003). The UTSA defines a trade secret as information that: (1) derives independent economic value from not being generally known to the public; and (2) is the subject of reasonable efforts to maintain its secrecy. CAL. CIV. CODE § 3426.1(d). The UTSA further defines trade secret misappropriation, in relevant part, as (1) disclosure / use of another's trade secret without consent by one who (2) at the time of disclosure / use, knew or had reason to know that his knowledge of the trade secret was (3) acquired under circumstances giving rise to a duty to maintain its secrecy. *Id.* § 3426.1.

MedioStream argues that Nero's trade secret misappropriation counterclaim fails to adequately plead a cause of action under the UTSA and therefore should be dismissed.

---

[2] Considering the facts presently developed, the parties appear to agree that California law will likely govern Nero's trade secret misappropriation claim because the contract under which MedioStream is alleged to have misappropriated Nero's trade secret includes a California choice-of-law provision.

However, Nero alleged that portions of its embedded API constitute trade secret information, explaining that: (1) details of potions of the embedded API are not generally known to the public; (2) the embedded API provides Nero with a competitive advantage; and (3) the embedded API is guarded by reasonable measures to protect its secrecy, such as requiring third-parties to enter into a non-disclosure agreement prior to gaining access to the embedded API. (Fourth Am. Countercl. ¶ 10). Nero goes on to plead that MedioStream received a copy of Nero's embedded API under the terms and conditions of the SEA, which imposed strict limitations on MedioStream's use of the embedded API. (Fourth Am. Countercl. ¶¶ 15, 18). Finally, Nero alleged that MedioStream sent the embedded API to its subsidiary in Shanghai, China, and thereby used the trade secret information without authorization and in a manner inconsistent with MedioStream's obligations of confidentiality under the SEA. (Fourth Am. Countercl. ¶¶ 18-20).

Considering the allegations Nero has pled, the court concludes that Nero has sufficiently stated a claim for trade secret misappropriation under the UTSA. Nero not only identified the information it alleges contains the trade secret, but also pled specific actions it has taken to protect that information. Those actions in and of themselves lend support to Nero's allegations that its trade secret information is not generally known to the public and provides the company with a competitive advantage. Furthermore, Nero unambiguously describes the actions by which MedioStream is alleged to have misappropriated Nero's trade secret. Thus, far from providing the court with mere conclusory statements, Nero has pled facts establishing that its trade secret misappropriation claim under the UTSA is plausible. As such, the court denies MedioStream's motion to dismiss Nero's misappropriation counterclaim under Rule 8(a).

2.  *Statute of Limitations*

Under the UTSA, the statute of limitations for a misappropriation claim is "three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  CAL. CIV. CODE § 3426.6.  California's discovery rule provides that the limitations period runs from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *See Weatherly v. Universal Music Publ'g Grp*, 23 Cal. Rptr. 3d 157, 161 (Cal. Ct. App. 2004); *Intermedics v. Ventritex, Inc.*, 822 F. Supp. 634, 640 (N.D. Cal. 1993).  Thus, the "discovery rule protects those who are ignorant of their cause of action through no fault of their own.  It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Weatherly*, 23 Cal. Rptr. 3d at 161.

MedioStream argues that the three-year limitations period for Nero's misappropriation counterclaim has run, and therefore the counterclaim should be dismissed.  According to MedioStream, its alleged failure to submit bug reports, report destruction, and return the API in July 2001 would have put any reasonably diligent person on notice of Nero's misappropriation claim.  Nero, however, argues that the misappropriation counterclaim has nothing to do with bug reports.  Instead, according to Nero, the counterclaim focuses on MedioStream's unauthorized copying and distribution of Nero's trade secret to persons in China.  (Fourth Am. Countercl. ¶¶ 20, 71, 72).  Although these actions occurred in July 2001, Nero argues that it could not have known of the misappropriation until discovery began in this action, and therefore Nero urges the court to conclude that its misappropriation claim did not accrue until MedioStream's actions were revealed.

Nero's misappropriation counterclaim will be dismissed only if the court can conclude "beyond doubt that the statute of limitations period has run." *La Porte*, 805 F.2d at 1255. As such, the face of Nero's answer must "compel the conclusion that [Nero] had discovered or in the exercise of reasonable diligence should have discovered facts which, under [Nero's] view of the case, could have given rise to [its] misappropriation" counterclaim more than three years before it asserted the counterclaim. *Intermedics*, 822 F. Supp. at 640. Nero has alleged that MedioStream's misappropriation occurred the day it received Nero's trade secret when MedioStream covertly sent the trade secret information to its subsidiary in China in violation of its confidentiality obligations under the SEA. (Fourth Am. Countercl. ¶ 20). Further, as discussed above, Nero alleges that MedioStream fraudulently concealed its true intentions with respect to Nero's trade secret. (Fourth Am. Countercl. ¶¶ 16, 17). Finally, Nero pleads that since MedioStream's covert actions were in-house, there is no reasonable inquiry that Nero could have made to detect MedioStream's misappropriation. (Fourth Am. Countercl. ¶¶ 23, 24). The face of Nero's answer reveals no facts compelling the court to conclude as a matter of law that the limitations period accrued in July 2001. It is plausible that California's discovery rule could apply to Nero's misappropriation counterclaim, and therefore the court denies MedioStream's motion to dismiss the counterclaim.

3. *California Procedure Requirements*

Under Cal. Civ. Proc. Code § 2019.210, "[i]n any action alleging the misappropriation of a trade secret…, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity…." Relying on this procedural rule, MedioStream argues that Nero's misappropriation claim may not be brought because Nero did not disclose its alleged trade secret before discovery began, which was over a

year ago. However, the rule does not require that a party identify the trade secret before *discovery* in general begins. Rather, by its plain language, the rule requires that the trade secret be identified "before commencing *discovery related to the trade secret*." *Id.* (emphasis added). In general, the purpose of this rule is to prevent trade secret related discovery from beginning before a particular trade secret has been identified. *See Perlan Therapeutics, Inc. v. Superior Court*, 101 Cal. Rptr. 3d 211, 220 (Cal. Ct. App. 2009) (citing the four purposes of Cal. Civ. Proc. Code § 2019.210). MedioStream has not made any showing that discovery related to Nero's alleged trade secret began prior to its disclosure of the trade secret in its answer. As such, the court rejects MedioStream's contention that Nero's counterclaims should be dismissed under Cal. Civ. Proc. Code § 2019.210.

### D. Nero's Eighth Counterclaim for Breach of the NeroSDK License Agreement

MedioStream first urges the court to dismiss Nero's counterclaim alleging breach of the NeroSDK License Agreement (the "License") because the License has a choice-of-law provision stating that it is governed by German law. According to MedioStream, the court is not required to grant relief on a contract governed by the laws of Germany. But MedioStream fails to cite the court to any authority which would allow the court to grant a 12(b)(6) motion to dismiss merely because foreign law might govern the claim at issue.

MedioStream further argues that this counterclaim should be dismissed because it fails to meet the pleading requirements of Rule 8. Specifically, MedioStream contends that Nero failed to allege that the License is a valid contract. To determine whether Nero pled facts sufficient to comply with Rule 8, the court must first determine what choice-of-law most likely applies. But since the facts of this case have not been completely developed, neither party can fully brief the court on their position regarding the law governing the License. Nero, however, contends that

14

although the License has a German choice-of-law provision, California may have a more significant relationship to the License. And therefore, Nero argues that the court may end up choosing to apply the substantive law of California.[3] Nero alleges that although the License is believed to have been written in Germany, MedioStream is believed to have requested, reviewed, and accepted the License from its home in California. In addition, Nero alleges that the breach is believed to have occurred or at least have been orchestrated from MedioStream's California location. At the pleading stage, it is at least plausible that California law may govern, and therefore Nero need only plead facts sufficient to state a claim under California contract law. *See C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000) (concluding that plaintiff "presented sufficient facts to demonstrate that the claim at least was plausible, under the law of either Kansas or Illinois, and [thus] the district court should have proceeded to try the case on its merits…").

Under California law, to prevail in a breach of contract claim, a party must show: (1) the existence of a contract; (2) proof of the plaintiff's performance; (3) evidence of the defendant's breach; and (4) damages. *EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001). Nero pled the following factual allegations in support of its eighth counterclaim: (1) Nero's open API software was made available for download and use in accordance with certain terms and conditions and upon acceptance of Nero's shrink-wrap License (Fourth Am. Countercl. ¶¶ 25, 78); (2) the terms of the License expressly identify Nero as a party to the agreement (Fourth Am. Countercl. ¶ 26); (3) MedioStream accepted the License

---

[3] In Texas, contractual choice-of-law provisions are ordinarily enforced if the chosen forum has a substantial relationship to the parties and the transaction. *See De Santis v. Wackenhut*, 793 S.W.2d 670, 677-78 (Tex. 1990). A choice-of-law provision will not, however, be applied if (1) another jurisdiction has a more significant relationship with the parties and their transaction than the state they choose, (2) that jurisdiction has a materially greater interest than the chosen state, and (3) the jurisdiction's fundamental policy would be contravened by the application of the law of the chosen state. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999).

by downloading and using the open API (Fourth Am. Countercl. ¶ 25); (4) Nero performed all its obligations under the License by making its open API available for copying (Fourth Am. Countercl. ¶¶ 25, 79); (5) MedioStream breached the License agreement in numerous ways, including distribution of MedioStream's own application software, based at least in part on Nero's open API (Fourth Am. Countercl. ¶¶ 26, 80); and (6) MedioStream's actions have caused Nero irreparable harm, as well as monetary damages, in an amount to be proven at trial (Fourth Am. Countercl. ¶¶ 81-84).

Considering the foregoing, the court concludes that Nero's eighth counterclaim is amply pled. To comply with Rule 8's pleading requirements, Nero had to plead "sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570) (emphasis added). Nero's pleadings include factual allegations that address every element of its breach of contract claim. And, contrary to MedioStream's argument, Nero's factual allegations are not disguised legal conclusions, for Nero addressed the specific circumstances under which the contract was formed, performed, and breached. As such, the court denies MedioStream's motion to dismiss Nero's eighth counterclaim.

### E. Nero's Ninth Counterclaim for Breach of the GNU General Public License

MedioStream urges the court to dismiss Nero's counterclaim alleging breach of the GNU General Public License (the "GNU") because it is not sufficiently pled. It is again unclear what choice-of-law will, in the end, govern the GNU. But it is at least plausible that California law could apply. Therefore, as was the case above, Nero only needs to plead facts sufficient to state a claim under California contract law. *See C&F Packing*, 224 F.3d at 1306.

As stated above, to prevail in a breach of contract claim under California law, a plaintiff must show: (1) the existence of a contract; (2) proof of the plaintiff's performance; (3) evidence of the defendant's breach; and (4) damages. *EPIS*, 156 F. Supp. 2d at 1124. Nero pled the following facts in support of its allegation that MedioStream breached the GNU: (1) Nero's FAAD2 audio decoder source code is published and available for use under the terms and conditions of the GNU (Fourth Am. Countercl. ¶¶ 12, 29); (2) MedioStream downloaded one or more copies of Nero's FAAD2 as can be proven by Nero's discovery of a verbatim copy of the decoder in MedioStream's confidential production (Fourth Am. Countercl. ¶ 27); (3) pursuant to paragraph 5 of the GNU, MedioStream accepted the GNU and all of its terms and conditions for copying, distributing, or modifying Nero's FAAD2 audio decoder or works based on it when, for example, it used Nero's FAAD2 audio decoder in its commercially distributed products (Fourth Am. Countercl. ¶¶ 30, 31); (4) Nero is a party to the GNU as the copyright holder of the FAAD2 audio decoder (Fourth Am. Countercl. ¶ 13); (5) Nero performed all its obligations under the GNU by, for example, having made its FAAD2 audio decoder available for copying (Fourth Am. Countercl. ¶¶ 12, 27-29); (6) MedioStream breached the GNU license in numerous ways, including, among others, commercial use of the FAAD2 audio decoder in at least one version of MedioStream's neoDVD product (Fourth Am. Countercl. ¶ 91); and (7) MedioStream's actions have damaged Nero, in an amount to be proven at trial, and caused Nero irreparable harm. (Fourth Am. Countercl. ¶¶ 94-98).

In light of Nero's specific and detailed allegations, the court concludes that Nero has sufficiently pled its ninth counterclaim for breach of the GNU. Nero is not required to marshal all of its evidence in support of each of its factual allegations. *Ashcroft*, 129 S. Ct. at 1949. Rather, Nero must only allege factual allegations which, if accepted as true, demonstrate that it

has a plausible breach of contract claim. Nero has done just that, and as such the court denies MedioStream's motion to dismiss Nero's ninth counterclaim.

F.       **Nero's Tenth Through Twelfth Counterclaims for Copyright Infringement**

Nero's tenth through twelfth counterclaims allege copyright infringement of its embedded API, open API, and FAAD2 audio decoder. To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 556 (1985). MedioStream first argues that Nero did not plead facts showing that it owned a valid copyright in its embedded API, open API, and FAAD2. According to MedioStream, the copyrights attached to and relied on in Nero's pleadings protect only three individual files in the API and FAAD2. And since the copyright does not fully protect the API and FAAD2, MedioStream argues that Nero has failed to plead facts sufficient to show ownership of a valid copyright in the software alleged to be infringed – i.e., the entire API and FAAD2. But Nero has specifically pled that they applied for and received certificates of registration for software that included the embedded API, open API, and FAAD2. (Fourth Am. Countercl. ¶¶ 11, 13). Furthermore, Nero attached the aforementioned copyright registrations to its answer, thus providing the court with factual evidence to support its allegation that it owns valid copyrights in the software at issue. (Fourth Am. Countercl. ¶¶ 11, 13). MedioStream, on the other hand, provides the court with nothing more than a conclusory allegation that the copyrights Nero relies on do not protect the software MedioStream has allegedly infringed. Such conclusory allegations cannot overcome the presumption of truth that the court must afford Nero's factual allegations. *See Ashcrof,* 129 S. Ct.

at 1949. And therefore, the court concludes that Nero has sufficiently pled ownership of a valid copyright in its embedded API, open API, and FAAD2 audio decoder.

MedioStream further argues that Nero did not sufficiently plead facts showing copyright infringement. Nero, however, pled that MedioStream uses software obtained from Nero's open API and has published or licensed for publication software incorporating the open API without authorization. (Fourth Am. Countercl. ¶¶ 26, 103). Furthermore, Nero pled that MedioStream infringed its copyright in the embedded API by, among others things, copying and distributing the embedded API at its China location and publishing software incorporating the embedded API. (Fourth Am. Countercl. ¶¶ 20, 127) Finally, Nero alleged that MedioStream copied and published the FAAD2 audio decoder by using the decoder in its commercial products, including its neoDVD product. (Fourth Am. Countercl. ¶¶ 91, 115) In light of the foregoing, the court concludes that Nero has pled facts sufficient to demonstrate that it has a plausible copyright infringement claim and is entitled to relief. As such, the court denies MedioStream's motion to dismiss Nero's copyright infringement counterclaim.

### G. Nero's Thirteenth Counterclaim for Violation of Digital Millennium Copyright Act

A claimant alleging a violation of the Digital Millennium Copyright Act (the "DMCA") is entitled to relief upon showing that circumvention of a technological measure either infringes or facilitates infringement of a right protected by the Copyright Act. *See* 17 U.S.C.A. § 1201(a); *see also Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1318 (Fed. Cir. 2005). MedioStream urges the court to dismiss Nero's DMCA counterclaim because it is not sufficiently pled under Rule 8. Yet Nero pled the following facts in support of its DMCA counterclaim: (1) Nero provided MedioStream its embedded API in accordance with the SEA (Fourth Am. Countercl. ¶ 137); (2) the embedded API included one or more technical

measures for controlling access thereto (Fourth Am. Countercl. ¶ 137); (3) the technical measures controlling access to the embedded API precluded MedioStream from using and testing the embedded API beyond the twenty-one day time period set forth in the SEA (Fourth Am. Countercl. ¶ 137); (4) MedioStream, however, continued to test and use the embedded API beyond the twenty-one day time period (Fourth Am. Countercl. ¶ 138); and (5) MedioStream could not have done this without circumventing the embedded API's technological measures controlling access thereto (Fourth Am. Countercl. ¶ 138). Nero has specifically pled the actions MedioStream allegedly took in violating the DMCA. And as such, Nero has pled sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Therefore, the court denies MedioStream's motion to dismiss Nero's DMCA counterclaim.

### H. Nero's Fourteenth Counterclaim for Inequitable Conduct

The court hereby incorporates its denial of MedioStream's motion to dismiss defendants' inequitable conduct counterclaims (Dkt. No. 508).

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS MedioStream's motion to dismiss with regard to Nero's fifth counterclaim alleging breach of contract due to MedioStream's failure to destroy or return its copy of the embedded API. The court, however, DENIES MedioStream's motion to dismiss the remainder of Nero's fifth counterclaim, as well as Nero's sixth through fourteenth counterclaims.

SIGNED this 29th day of October, 2010.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE